UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN C. WALCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-00988-JPH-MPB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| *Acting Commissioner for Operations,* ) | |
| *Social Security Administration*[1] ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.

---

[1] In March 2018, the U.S. Government Accountability Office (GAO) informed the President of its determination that Nancy Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 (FVRA) allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor. *Patterson v. Berryhill*, No. 2:18-cv-193, (W.D. Pa. June 14, 2018) https://www.leagle.com/decision/infdco20180615f26 (last visited Jan. 23, 2019). Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her Deputy Commissioner for Operations title of record. *Id.* However, she has resumed her role as Acting Commissioner after the President's nomination of a potential successor. *Id.*; *see* 5 U.S.C. § 3346(a)(2) (providing that, once a first or second nomination for the office is submitted to the Senate, an acting officer may serve from the date of such nomination for the period the nomination is pending in the Senate); *see also* Daily Digest of the Senate, https://www.govinfo.gov/content/pkg/CREC-2019-01-16/pdf/CREC-2019-01-16-dailydigest.pdf (last visited Jan. 23, 2019) (showing the re-nomination of Andrew Saul on January 16, 2019 as the Commissioner of Social Security). The case caption has been updated to reflect Ms. Berryhill's current official title.

9). Plaintiff John W.[2] seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits (DIB). The matter is fully briefed with the reply period passing without filing from Plaintiff. (Docket No. 10, Docket No. 16). It is recommended that the District Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding that Plaintiff John W. is not disabled.

## Introduction

Plaintiff, John W., protectively filed his application for Title II on December 2, 2014, for disability insurance benefits, alleging disability beginning May 1, 2013. (Docket No. 7-2 at ECF p. 16).

His claim was denied initially and upon reconsideration. (Docket No. 7-4 at ECF p. 2; Docket No. 7-4 at ECF p. 7-4 at ECF p. 9). Administrative Law Judge (ALJ) T. Whitaker held a hearing on February 16, 2017, at which John W., represented by counsel, and a vocational expert (VE) Constance R. Brown, appeared and testified. (Docket No. 7-2 at ECF pp. 38-74). After the hearing, on June 21, 2017, the ALJ issued an unfavorable decision. (Docket No. 7-2 at ECF pp. 13-30). The Appeals Council denied review on January 31, 2018. (Docket No. 7-2 at ECF p. 2). On March 29, 2018, John W. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Deputy Commissioner denying her benefits.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[2] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similarly listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.

3

20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC. If so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ— not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot

ignore a line of evidence that undermines the conclusions she made. The ALJ must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

## I. The ALJ's Sequential Findings

John W. was 49 years of age on the date last insured. (Docket No. 7-2 at ECF p. 28). Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016 and had not engaged in substantial gainful activity from his amended alleged onset date of May 1, 2013 through his date last insured. (Docket No. 7-2 at ECF p. 18).

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that John W. was not disabled. (Docket No. 7-2 at ECF p. 30). At step one, the ALJ found that John W. had not engaged in substantial gainful activity.[3] *Id*. At step two, the ALJ found that he had the following severe impairments:

> "degenerative disc disease of the lumbar spine with compound fracture at L5, pars defect, spinal bifida, facet arthropathy, facet syndrome and stenosis of the lumbar spine with radiculopathy; degenerative disc disease of the thoracic spine; degenerative disc disease, facet arthropathy and stenosis of the cervical spine; chronic back pain; mild neurocognitive disorder due to traumatic brain injury; major depressive disorder; bipolar disorder with psychotic episodes; anxiety; anger impulse dysfunction; visual disturbance with chronic migraine headache probably secondary to old head trauma; and traumatic encephalopathy."

(Docket No. 7-2 at ECF p. 18). At step three, the ALJ found that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether a profit is realized). 20 C.F.R. § 404.1572(a).

5

impairments—specifically considering Listings 1.02, 1.04, 2.00, 11.14, 11.00, 12.02, 12.03, 12.04, and 12.06. ([Docket No. 7-2 at ECF p. 19](#)). After step three, but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift, carry, push, and pull ten pounds occasionally and five pounds frequently; sit for six hours per eight-hour workday; and stand and walk, in combination, for two hours per eight-hour workday. He is limited to work that allows the individual to sit and stand alternatively, provided that, at one time, the claimant can only sit for 30 minutes, stand for 30 minutes, and walk for 30 minutes, and further provided that the claimant is in the new position for at least one minute before resuming to the prior position. He can never climb ladders, ropes, and scaffolds; he can occasionally stoop, but he can never repetitively stoop below the waist. There should be no exposure to wetness, unprotected heights, or dangerous machinery. The claimant is limited to simple, routine, and repetitive work. The claimant is limited to work that has no interaction with the public and only occasional interaction with coworkers and supervisors. Lastly, the claimant is limited to work that allows the individual to be off task five percent of the workday in addition to regularly scheduled breaks.

([Docket No. 7-2 at ECF p. 21](#)).

At step four, the ALJ concluded that the claimant is unable to perform any past relevant work. ([Docket No. 7-2 at ECF p. 28](#)). At step five, the ALJ concluded that the Plaintiff was forty-nine years old, or a younger individual, on the date last insured. ([Docket No. 7-2 at ECF p. 28](#)). Moreover, the ALJ concluded that John W. has at least a high school education and is able to communicate in English. ([Docket No. 7-2 at ECF p. 13](#)). The ALJ then found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded he would still be able to perform the job of Addresser. ([Docket No. 7-2 at ECF p. 29](#)).

6

II. **Review of Plaintiff's Assertions of Error**[4]

   A. **Listing 1.04**

John W. argues that the ALJ erred at Step four by finding that Listing 1.04 was not met without sufficient discussion of the evidence as it relates to the requirements of the listing criteria. (Docket No. 10 at ECF pp. 4, 18-22). Specifically, Plaintiff argues that the ALJ failed to consider whether Plaintiff's impairments met any of the non-exhaustive examples of ineffective ambulation provided in Listing 1.00(B), such as inability to walk a block at a reasonable pace, or the ability to carry out routine activities, like shopping and banking. (Docket No. 10 at ECF p. 19). The Commissioner counters that the ALJ's decision reflects that she carefully considered the listing criteria and discussed the relevant treatment records, which showed that Plaintiff's impairments did not entitle him to a presumption of disability. (Docket No. 16 at ECF p. 8).

Under a theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

---

[4] As Commissioner points out, Plaintiff's second "assertion of error" in his brief seems to simply point out that the ALJ assessed a RFC of a reduced range of sedentary work. (Docket No. 10 at ECF p. 22-23). Plaintiff failed to file a reply brief that rebuts this contention. The Court agrees. It is unclear what Plaintiff's argument is in relation to this point, as he charges no error with the RFC determination other than that discussed in a separate issue related to migraine headaches. Instead, he quotes from SSR 96-9p, 1996 WL 374185, which states that an RFC of less than a full range of sedentary work "reflects very serious limitations." *Id.* Plaintiff makes no attempt to develop this point or to make any argument that a RFC of a reduced range of sedentary work was improper—thus, waiving any such argument. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (failure to raise argument in district court results in waiver).

To establish he was presumptively disabled at step three, Plaintiff had the burden to show that his back pain and degenerative disc disease met or medically equaled all the criteria under Listing 1.04C. *See* 20 C.F.R. § 404.1520; *see also Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). "An impairment that manifests only some of [the required] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Under the second method of proving presumptive disability, to demonstrate "medical equivalence," the claimant must present "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* (emphasis in original); *see* 20 C.F.R. § 404.1526(a) (an impairment is "equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment").[5]

Listing 1.04C relates to disorders of the spine "resulting in compromise of a nerve root . . . or the spinal cord" with evidence of the following: (1) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging; (2) chronic nonradicular pain and weakness; and (3) resulting in an inability to ambulate effectively as defined in 1.00(B)(2)(b). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Notably, Plaintiff focuses only on the last criteria while failing to argue that the medical evidence established he met the other criteria. (Docket No. 10 at ECF pp. 17-21). For this reason alone, Plaintiff's argument fails. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) ("To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment.").

---

[5] "Medical equivalence" may be found in one of three ways: (1) the claimant's impairment is included in the listings but one or more of the criteria set out in the listing for that impairment cannot be met; (2) the claimant's impairment is not included in the listings, but another impairment can be used as a guide; or (3) the claimant has a number of impairments that do not meet or equal a listed impairment, but can be combined together to meet an analogous impairment in the listings. *See* 20 C.F.R. § 404. 1526(b). Here, Plaintiff has made no attempt to argument that is impairments *equaled* a listing. (Docket No. 10 at ECF pp. 17-21).

"Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2004).

Here, the ALJ provided more than a perfunctory analysis. The ALJ explained that she considered whether Plaintiff's impairment met or equaled listings 1.02 and 1.04. (Docket No. 7-2 at ECF p. 19). The ALJ explained that these:

> [L]istings were not satisfied because the medical evidence did not show gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* The ALJ further pointed out that "while some physical examinations documented slightly limited range of motion in the spine, other examinations were within normal limits." *Id.* The ALJ also addressed the fact that while Plaintiff's "gait was antalgic at times . . . it was stable and sustainable" as reflected in the medical record. *Id.* Specifically addressing Listing 1.04, the ALJ noted that there was no evidence of nerve root compression or the spinal cord with the other criteria in Listing 1.04C. *Id.*

Unlike in *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), where the ALJ's step 3 analysis of Listing 1.04 was a conclusory two sentences, here the ALJ dedicated an entire paragraph to Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (Docket No. 7-2 at ECF p. 19). The ALJ discussed evidence that cut for and against her conclusion that those listings were not met.

Throughout the opinion, the ALJ discussed the relevant medical records that supported her step-three determination. For instance, the ALJ noted that Plaintiff's chronic back pain dated

9

back to the late 1980s and early 1990s, when he was an amateur boxer and suffered a fraction of his vertebrae at L5. (Docket No. 7-2 at ECF p. 22, citing Docket No. 7-7 at ECF pp. 52, 54, 76). The treatment records cited by the ALJ reflect that Plaintiff continued to work for decades with his back pain (and other chronic impairments) doing construction work. *Id.* During a September 2013 visit with his primary care physician, Plaintiff reported that he did back exercises daily and that he only took his pain medication "when he really needs to" but had "hardly been using [them] within the past week bec[ause] of reduced pain." (Docket No. 7-7 at ECF p. 54). During a February 2015 neurological exam Dr. Puzio reflected a gait with "slightly broad base and short stride-antalgic quality," but "normal heel, toe and tandem gait," negative Romberg's test, ability to stand without difficulty, and full strength and normal motor function in all of Plaintiff's extremities. (Docket No. 16 at ECF p. 328-31).

Plaintiff only argues that he met *one* of the criteria of Listing 1.04C—evidence of an inability to ambulate effectively. (Docket No. 10 at ECF pp. 18-22). Even this evidence falls short of establishing that Plaintiff's impairments entitled him to a presumption of disability at step three. Under listing 1.00B2b, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *See* 20 C.F.R. § 404.1520(d), pt. 404, subpt. P, app. 1. Examples of ineffective ambulation include:

> [T]he inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

10

*Id.* While Plaintiff quotes from the listing's examples, he never states which of these examples were applicable to his case or demonstrated by his medical records. (Docket No. 10 at ECF pp. 18-22).

Moreover, the medical records he cites as evidence of his ineffective ambulation do not establish that his impairments met listing-level severity. (Docket No. 10 at ECF p. 19). He cites a treatment record from September 2013 (8 months after his alleged onset date), which noted that he had a "wide-based gait with evident discomfort." (Docket No. 7-7 at ECF p. 10). This record also indicated that he had reduced strength "symmetrically in [his] legs with marked discomfort raising thighs against resistance, but seemed to be pain limited." *Id.* Plaintiff relies on Dr. Puzio's evaluation, which described his gait as "slightly broad base[d] and short stride-antalgic quality." (Docket No. 10 at ECF p. 19, citing Docket No. 7-7 at ECF pp. 76-80). However, this treatment record also showed that Plaintiff was "able to stand without difficulty" and that he had "normal heel, toe and tandem gait" and that his Romberg test was negative. (Docket No. 7-7 at ECF p. 79). Similarly, Plaintiff points to Dr. Heflin's consultative examination, which showed that his gait was "slow and antalgic due to back and left hip pain." (Docket No. 10 at ECF p. 19, citing Docket No. 7-7 at ECF p. 84). But, the exam also indicated that Plaintiff had normal posture, could stand on his heels and toes, "could squat down to the floor to pick up a pen with slight difficulty due to low back pain," was able "to walk in tandem heel-to-toe," and get on and off of the exam table without assistance. (Docket No. 7-7 at ECF p. 84). Dr. Heflin concluded that the "[c]linical evidence does not support the need for an ambulatory aid." *Id.* He had "[n]o spinal or paraspinal tenderness" during the exam and had a negative straight leg raise. *Id.*

While Listing 1.00B2b provides several examples of an inability to ambulate effectively, the evidence in the record does not establish that Plaintiff's impairments resulted in sufficiently

11

compromised ambulation, as the ALJ concluded. (Docket No. 7-2 at ECF p. 19). The ALJ discussed all the records cited herein in her decision (Docket No. 7-2 at ECF pp. 18-27) and concluded that they did not constitute evidence that Plaintiff's impairments met or equaled Listing 1.04C (Docket No. 7-2 at ECF p. 19).

Finally, John W. argues that the ALJ erred in failing to obtain a medical opinion on the issue. (Docket No. 10 at ECF p. 21). No further argument or authority is provided and thus, this argument is waived. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (stating that perfunctory and underdeveloped arguments are waived); *Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 WL 114173 (N.D. Ill. 2014) (applying *Berkowitz* to reject underdeveloped arguments in a Social Security appeal).

### B. Plaintiff's Subjective Complaints

John W. raises several arguments regarding the ALJ's credibility determination. (Docket No. 10 at ECF pp. 25-32). While some of the errors that John W. alleges may be well founded, none rise to the level required for reversal or remand. They do not render the credibility determination patently wrong, and so these decisions should be affirmed.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, which are supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008)) ("An ALJ's credibility determination may be overturned only if it is 'patently wrong'"). Under SSR 16-3p,[6] ALJs follow a two-step process to evaluate a

---

[6] SSR 16-3p replaced SSR 96-7p. Among other things, SSR 16-3p clarifies SSA's existing policy be explicitly stating that an ALJ need not discuss all of the regulatory factors that she considers, except as she finds them pertinent to the case. SSR 16-3p (S.S.A.), 2016 WL 1119029, (March 28, 2016).

12

claimant's subjective symptoms. First, ALJs consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms, such as pain. *Id.* ALJs then evaluate the intensity and persistence of those symptoms to determine the extent the symptoms limit an individual's ability to perform work-related activities. *Id.* In evaluating these subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ criticized John W.'s credibility in part because of his "conservative treatment for his impairments," his failure to "return for follow-up appointments after the initial evaluation with neurologist Dr. Puzio" and no recommendations for surgery. (Docket No. 7-2 at ECF p. 26). John. W. argues that the ALJ erred because she did not question if Plaintiff had any reasons for his limited course of treatment. (Docket No. 10 at ECF pp. 27-28).

Indeed, an ALJ may not base an adverse credibility determination on a conservative course of treatment without inquiring into why the claimant took such a conservative course of treatment. SSR 16-3p. And the hearing transcript reveals that the ALJ did not raise this subject with John W. (Docket No. 7-2 at ECF pp. 38-74).

But this error does not independently create a reason to remand the action. The ALJ gave a thorough explanation for her credibility determination, and this error was but a small part. For instance, the ALJ discussed inconsistent medical evidence and aggravating factors. (Docket No. 7-2 at ECF pp. 22-27). For example, the ALJ noted that a "physical examination in November 2014 was unremarkable and revealed normal coordination, reflexes, muscle tone, and straight leg raises." (Docket No 7-2 at ECF p. 26, citing Docket No. 7-7 at ECF pp. 52-53). The ALJ also

13

points out that while Plaintiff represented that he used a cane "about two years ago," he "hardly uses it at this time" and "the record does not support the use of cane or other assistive device, as physical examinations consistently document full motor strength and normal range of motion in the lower extremities." (Docket No. 7-2 at ECF p. 26). Under 20 C.F.R. § 404.1529, it was appropriate to consider the inconsistencies between Plaintiff's allegations and the medical record.

It was also appropriate for the ALJ to note that Plaintiff was discharged from the pain management clinic for violating the narcotic pain medication contract. (Docket No. 7-2 at ECF p. 26). *See Campbell v. Barnhart*, No. 4:04-cv-202-WGH-DFH, 2005 WL 4881106, at *5 (S.D. Ind. Oct. 9, 2005) ("As for her drug seeking behavior, multiple doctors noted it as a possibility, including one doctor who dismissed himself as [Plaintiff's] treating physician because there were reports of her selling her pain medications. It was not patently wrong for the ALJ to infer, given the doctors' observations, that at least some of her medical visits were driven by drug seeking behavior.").

Therefore, even acknowledging this error, the ALJ still supported her credibility assessment with sufficient evidence that cannot be fairly characterized as patently wrong.

John W. also argues that the ALJ never once mentioned any of his activities of daily living and failed to consider that his ADLs were considerably less strenuous than any full-time employment. (Docket No. 10 at ECF p. 29). It is not clear whether Plaintiff is arguing that the ALJ should have given greater weight to his allegations of limited ADLs or that the ALJ relied too heavily on Plaintiff's activities as evidence that he could work. Either way, Plaintiff's argument asks this court to reweigh the evidence under 20 C.F.R. § 404.1529(c), despite the fact that the ALJ provided a sufficient explanation for her assessment of Plaintiff's allegations. Even

14

if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints. *See Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (citations omitted) (emphasis in original) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are, and here the ALJ cited other sound reasons for disbelieving Halsell."); *Ziegler v. Astrue*, 336 F. App'x 563, 570 (7th Cir. 2009) ("But those errors do not require reversal. So long as there is some record support for the credibility determination, we will not reverse."). Because the ALJ supported her credibility determination with other substantial evidence, the Court cannot deem it patently wrong.

### C. RFC and Plaintiff's Migraine Headaches

Finally, John W. argues that the ALJ failed to consider the impact of his severe migraines and headaches on his ability to perform and maintain employment. (Docket No. 10 at ECF pp. 33-37). He specifically argues that the ALJ failed to consider that Plaintiff would likely be absent at least once per week, every week, due to his migraines. (Docket No. 10 at ECF p. 33). The Commissioner counters that while Plaintiff carried the burden of production, he presented no evidence in the record that supported the inclusion of any additional RFC restrictions. (Docket No. 16 at ECF pp. 19-23).

John W. concedes that the ALJ "fully document[ed] the existence of [his] migraines," but argues that there is no discussion of "how and why these migraines would not prevent [him] from being able to maintain employment." (Docket No. 10 at ECF p. 33). He further argues "[t]here is no description in the record documenting [him] having migraines with any less frequency than two times per week," thus, he concludes, he would not be able to maintain employment. *Id.*

15

The medical evidence cited by the ALJ undermines Plaintiff's claims regarding the severity of his symptoms. For example, the ALJ noted that Plaintiff had been experiencing his headaches for decades (throughout many years when he continued to work full time) and that these stemmed from injuries suffered "in the late 1980s and early 1990s as an amateur boxer." (Docket No. 7-2 at ECF p. 22, citing Docket No. 7-7 at ECF pp. 52-54). These treatment records show that Plaintiff told Dr. Puzio that Abilify "has greatly helped his headaches," which had reduced in frequency from daily to two or three times a week. (Docket No. 7-7 at ECF p. 76). Plaintiff also told Dr. Puzio that "[u]sually, he can take aspirin or ibuprofen for the headache.". *Id.* Similarly, in March 2016, Plaintiff was treated by the Indiana University Pain Clinic where the treatment notes denied migraine disorders and frequent headaches under the Review of Systems and did not mention migraines in his medical history. (Docket No. 7-11 at ECF pp. 50-51). The medical evidence did not support Plaintiff's proposed limitations that he would be absent from work at least once per week due to his migraine headaches.

Plaintiff cites a host of cases for the general proposition that an ALJ may not rely solely upon objective medical evidence to ignore subjective complaints of pain, particularly when considering migraine headaches as they are unsusceptible to diagnostic testing. (Docket No. 10 at ECF pp. 33-36). Plaintiff's recitation of the law is correct, however its application to this case is unpersuasive. The ALJ did consider Plaintiff's subjective complaints. (Docket No. 7-2 at ECF p. 22) ("The claimant reported that he experienced headaches two to three days a week."). In sum, the ALJ's discussion of the evidence regarding Plaintiff's migraines was sufficient to draw a logical bridge to the restricted sedentary-work RFC she assessed.

16

**Conclusion**

For all these reasons, the Magistrate Judge recommends that the Court **AFFIRM** the ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 5th day of February, 2019.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.